Clerk's Office
Filed Date:
6/30/2023

U.S. DISTRICT
COURT
EASTERN
DISTRICT OF
NEW YORK
BROOKLYN
OFFICE

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

---

FEDERAL TRADE COMMISSION,

    Plaintiff,

    v.

PUBLISHERS CLEARING HOUSE LLC,
a New York limited liability company,

    Defendant.

---

**Case No.:  23-cv-4735 (ENV) (LGD)**

**JOINT MOTION FOR ENTRY OF STIPULATED ORDER
FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT**

    Plaintiff, the Federal Trade Commission ("FTC"), and Defendant, Publishers Clearing House LLC, respectfully and jointly move the Court for entry of the attached Stipulated Order for Permanent Injunction, Monetary Judgment, and Other Relief. In support of this motion, the parties state as follows:

    1.    On June 26, 2023, the FTC filed a Complaint for Permanent Injunction, Monetary Relief, and Other Relief against Defendant pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. ¶¶ 53(b) and 57b.

    2.    The FTC and Defendant, having been represented by counsel and acting by and through such counsel, have consented to the entry of a proposed Stipulated Order for Permanent Injunction, Monetary Judgment, and Other Relief, attached as Exhibit 1 hereto, without a trial or adjudication of any issue of law or fact.

    3.    Entry of this Stipulated Order for Permanent Injunction, Monetary Judgment, and Other Relief would resolve this matter in full, except that the Court would retain jurisdiction for

the purpose of enforcement of the Order.

WHEREFORE, the parties respectfully move this Court to enter the attached Stipulated

Order for Permanent Injunction, Monetary Judgment, and Other Relief.

Dated: June 27, 2023

Respectfully submitted,

SAVVAS S. DIACOSAVVAS
FEDERAL TRADE COMMISSION
Northeast Region
One Bowling Green, Suite 318
New York, NY 10004
Tel.: 212-607-2809
Fax: 212-607-2822
Email: sdiacosavvas@ftc.gov

MIRY KIM
ELSIE B. KAPPLER
JOSH DOAN
FEDERAL TRADE COMMISSION
Division of Marketing Practices
Bureau of Consumer Protection
600 Pennsylvania Ave., N.W., CC-6316
Washington, DC 20580
Tel.: 202-326-3622 (MK)
Tel.: 202-326-2466 (EBK)
Tel.: 202-326-3187 (JD)
Fax: 202-326-3395
Email: mkim@ftc.gov
Email: ekappler@ftc.gov
Email: jdoan@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

LINDA A. GOLDSTEIN
VICTORIA RUTHERFURD
LAUREN LYSTER
BAKER & HOSTETLER LLP

2

45 Rockefeller Plaza
New York, NY 10111
Tel.: 212-589-4206 (LAG)
Tel.: 212-589-4683 (VR)
Tel.: 212-589-7036 (LL)
Fax: 212-589-4201
Email: lgoldstein@bakerlaw.com
Email: vrutherfurd@bakerlaw.com
Email: llyster@bakerlaw.com

Attorneys for Defendant
PUBLISHERS CLEARING HOUSE LLC

3

# EXHIBIT 1

EXHIBIT 1 TO JOINT MOTION FOR ENTRY OF STIPULATED ORDER FOR
PERMANENT INJUNCTION AND MONETARY JUDGMENT

(Proposed Stipulated Order)

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

FEDERAL TRADE COMMISSION,

 Plaintiff,

 v.

PUBLISHERS CLEARING HOUSE LLC, a
New York limited liability company,

 Defendant.

**Case No: 23-cv-4735 (ENV) (LGD)**

**STIPULATED ORDER FOR
PERMANENT INJUNCTION,
MONETARY JUDGMENT, AND OTHER
RELIEF**

  Plaintiff, the Federal Trade Commission ("Commission" or "FTC"), filed its Complaint for

Permanent Injunction, Monetary Relief, and Other Relief ("Complaint"), for a permanent injunction,

monetary relief, and other relief in this matter, pursuant to Sections 13(b) and 19 of the Federal

Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b.   Defendant has waived service of

the summons and the Complaint.   The Commission and Defendant stipulate to the entry of this

Stipulated Order for Permanent Injunction, Monetary Judgment, and Other Relief ("Order") to

resolve all matters in dispute in this action between them.

  THEREFORE, IT IS ORDERED as follows:

## FINDINGS

1. This Court has jurisdiction over this matter.

2. The Complaint charges that Defendant participated in deceptive and unfair acts or

practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, and Section 7(a) of the

Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 (CAN-SPAM

Act"), 15 U.S.C. § 7706(a), in the advertising and marketing of sweepstakes opportunities and

1

offering for sale of products and magazine subscriptions in connection with sweepstakes opportunities.

3.      Defendant neither admits nor denies any of the allegations in the Complaint, except as specifically stated in this Order.   Only for purposes of this action, Defendant admits the facts necessary to establish jurisdiction.

4.      Defendant waives any claim that it may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agrees to bear its own costs and attorney fees.

5.      Defendant and the Commission waive all rights to appeal or otherwise challenge or contest the validity of this Order.

## DEFINITIONS

For purposes of this Order, the following definitions apply:

A.      **"Defendant"** means Publishers Clearing House LLC, (**"PCH"**) also doing business as Liquid Wireless, Liquid, and PCH Media, and its successors and assigns.

B.      **"Call-to-Action"** means an interaction with a digital platform that indicates or reflects a decision and/or directs consumers to a specific destination.

C.      **"Clear(ly) and conspicuous(ly)"** means that a required disclosure is difficult to miss (*i.e.*, easily noticeable) and easily understandable by ordinary consumers, including in all the following ways:

      1.      In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented.   In any communication made through both visual and audible

2

means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means.

2. A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

3. An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it.

4. In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable.

5. The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears.

6. The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

7. The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

8. When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

3

D.    "**Collected Information**" means individually identifiable information from or about a consumer sufficient to personally identify the consumer collected by PCH on a digital platform owned or operated by Defendant, or by a service provider on behalf of Defendant.

E.    "**Ecommerce Platform**" means any user experience on an internet website, application, or online service operated by or on behalf of Defendant on which Defendant advertises, markets, or offers for sale Products, regardless of whether this platform is accessed on a computer, through a mobile application, or through any other device.   A user experience that only displays third-party advertising for Products that cannot be purchased in the user experience is not an "Ecommerce Platform."

F.    "**Products**" means all merchandise and services offered for sale by Defendant, including magazine subscriptions.

G.    "**Sweepstakes**" means any contest, giveaway, drawing, or other enterprise or promotion in which anything of value is offered or awarded to entrants by chance or random selection.

## ORDER

### I.    PROHIBITION AGAINST REPRESENTATIONS REGARDING ENTERING A SWEEPSTAKES AND ORDERING PRODUCTS

IT IS ORDERED that Defendant, Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting any Sweepstakes or promoting or offering for sale any Product on an Ecommerce Platform, are permanently restrained and enjoined from representing or assisting others in representing, expressly or by implication:

4

A.  That a purchase is necessary to enter a Sweepstakes; or

B.  That a purchase will improve an individual's chances of winning a Sweepstakes.

## II.  PROHIBITION AGAINST MISREPRESENTATIONS

IT IS FURTHER ORDERED that Defendant, Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting any Sweepstakes or promoting or offering for sale any Product on an Ecommerce Platform, are permanently restrained and enjoined from misrepresenting or assisting others in misrepresenting, expressly or by implication:

A.  That an individual is likely to win, or is close to winning, a Sweepstakes;

B.  That any particular characteristic of an individual in any way suggests that the individual has a greater likelihood of winning a Sweepstakes;

C.  That any individual is a member of a select group among Sweepstakes participants;

D.  That a consumer has entered a Sweepstakes;

E.  That a consumer has not entered a Sweepstakes;

F.  The result of engaging with a Call-to-Action;

G.  The means by which a consumer may enter a Sweepstakes;

H.  The likelihood of winning a Sweepstakes;

I.  The deadline for an entry or action regarding an entry in a Sweepstakes;

J.  The need for promptness or urgency in responding to any promotion of a Sweepstakes entry opportunity or any offer made in connection with promoting a Sweepstakes;

5

K.     The existence or occurrence of any action taken or to be taken by Defendant including, but not limited to, placing consumers on a special winners' list, awarding a prize in the same vicinity as the consumer, or planning to deliver a prize to the consumer;

L.     That an individual who has entered a Sweepstakes has failed to, or must, complete any action to:

   1.     Be eligible to win the Sweepstakes;

   2.     Claim a prize number on a winner selection list; or

   3.     Avoid disqualification, forfeiture, or cancellation of the opportunity to win the Sweepstakes;

M.     The total costs of a Product or order;

N.     Any fees or costs associated with returning a Product;

O.     That ordering a Product is risk free;

P.     The purpose of Defendant's collection, use, or disclosure of any Collected Information;

Q.     The extent to which Defendant:

   1.     Collects, uses, stores, or discloses Collected Information;

   2.     Protects the privacy, security, availability, confidentiality, or integrity of any Collected Information; or

   3.     Anonymizes or de-identifies any Collected Information; or

R.     Any other fact material to consumers concerning any Sweepstakes entry or entry opportunity.

6

### III.    METHOD AND FORM OF PRODUCT ORDERS AND SWEEPSTAKES ENTRIES

IT IS FURTHER ORDERED that Defendant, Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting any Sweepstakes in conjunction with promoting or offering for sale any Product on an Ecommerce Platform, must abide by the following conditions:

    A.      On any webpage, screen, or other digital display on which consumers may *both* order Products *and* submit a Sweepstakes entry ("Order-Entry Page"):

          1.      Defendant must visually delineate between the parts of the webpage, screen, or other digital display that (i) contain information regarding entering a Sweepstakes ("Sweepstakes-related Content") and (ii) the parts of the webpage, screen, or other digital display that contain information regarding ordering Products ("Product-related Content").   "Sweepstakes-related Content" and "Product-related Content" do not include any of the disclosures required in this Order.

          2.      The delineation described in Section III.A.1 shall be achieved by clearly and unambiguously separating the Sweepstakes-related Content from the Product-related Content, including, at a minimum, by using two parallel lines that extend across the webpage, screen, or other digital display.

          3.      The part of the webpage, screen, or other digital display that contains Product-related Content, exclusive of any disclosures required by this Order or

applicable laws, must be no more prominent than the parts of the webpage, screen, or other digital display that contain Sweepstakes-related Content.

4.  If the consumer has not, prior to reaching an Order-Entry Page, selected any Products to purchase:

   a.  The Sweepstakes-related Content must be presented above the Product-related Content on the Order-Entry Page; and

   b.  Defendant may include in the part of the webpage, screen, or other digital display for Product-related content, only a Call-to-Action that contains nothing other than "return to shopping," "continue shopping," or words of similar import, however, such Call-to-Action must be less prominent than any Call-to-Action to submit a Sweepstakes entry.

B.  Defendant may use a webpage, screen, or other digital display where consumers can *only* place an order *but not* submit a Sweepstakes entry if it prominently displays the statement "**Learn More About How to Enter**" on such webpage, screen, or other digital display.   The underlined portion of the disclosure must be a link, which, when engaged with by a consumer, leads directly to a webpage, screen, or other digital display that contains a Call-to-Action which, when engaged with by a consumer, results in immediate submission of an entry for that Sweepstakes entry opportunity.   Defendant may not display any other Sweepstakes-related content at this link. However, Defendant need not display the above statement and link where the consumer has already submitted a Sweepstakes entry as part of the relevant user experience.

C.  Defendant may use a webpage, screen, or other digital display where consumers can *only* submit a Sweepstakes entry *but not* place an order if Defendant (i) do not therein include any

8

Product-related Content, other than a Call-to-Action that contains nothing other than "return to shopping," "continue shopping," or words of similar import; and (ii) such Call-to-Action is less prominent than the Call-to-Action to submit a Sweepstakes entry.

D.     Immediately above any Call-to-Action, which, when engaged with by the consumer, results in the placement of an order, Defendant must Clearly and Conspicuously display the statement below:

> I understand that **I don't have to buy anything** to enter the Sweepstakes and that **buying won't help me win.**

The text that appears in bold font above must appear in bold font in the disclosure. Defendant must display the above statement immediately adjacent to a check box, placeholder for signature, Call-to-Action, or other substantially similar method of affirmative acknowledgement, which the consumer must affirmatively select, sign, take action on, or engage with before a consumer may engage with the Call-to-Action to place an order.

Provided, however, that if a consumer has already submitted a Sweepstakes entry as part of the user experience on the Ecommerce Platform, and Defendant will not present the consumer with any other Sweepstakes entry opportunity as part of such experience, the requirement that Defendant display the above text, and checkbox, placeholder for signature, Call-to-Action, or other substantially similar method of affirmative acknowledgement shall not apply.

E.     For each user experience on an Ecommerce Platform containing one or more references to a Sweepstakes, Defendant must Clearly and Conspicuously present the consumer with at least one Call-to-Action allowing the consumer to enter the Sweepstakes directly by engaging with the Call-to-Action.   This Call-to-Action shall be presented no later than on the order

9

confirmation page referred to in Section V.D.   The Call-to-Action under this Subsection shall be in addition to the links leading to a Sweepstakes entry opportunity required under Sections III.B, IV.B, and IV.C but may include any Call-to-Action presented during the same user experience that allows the consumer to enter the Sweepstakes directly by engaging with the Call-to-Action.

      F.      When a consumer attempts, with or without an order, to submit a Sweepstakes entry by engaging with a Call-to-Action that Defendant has provided as a means of entering the Sweepstakes, the consumer must be immediately entered into the Sweepstakes.

      G.      Except where a consumer has placed an order and submitted an entry from an Order-Entry Page, immediately after a consumer has submitted a Sweepstakes entry, Defendant must confirm that the entry has been processed.

      H.      If a consumer has placed an order and submitted a Sweepstakes entry from an Order-Entry Page, immediately after a consumer has done so, on a webpage, screen, or digital display, Defendant must confirm that the entry has been processed, and also confirm that the order has been placed by displaying the order confirmation information required under Section V.D.

      I.      Defendant shall have 60 days from entry of this Order to fulfill the requirements of Sections III.B, III.D, and III.G, except that Defendant shall be required to display the statement in Section III.D in the manner described immediately upon entry of this Order.

## IV.      MANDATORY DISCLOSURE OF MATERIAL INFORMATION REGARDING PRODUCT ORDERS AND SWEEPSTAKES ENTRIES

      IT IS FURTHER ORDERED that Defendant, Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting any Sweepstakes or offering for sale any Product on an Ecommerce Platform, are permanently restrained

10

and enjoined from failing to disclose Clearly and Conspicuously:

    A.     In any email from Defendant that may lead a consumer directly or indirectly to an Ecommerce Platform that advertises or markets Sweepstakes, the following text:

> **No Purchase Necessary.   A Purchase Will Not Improve Your Chances of Winning.**

The text that appears in bold font and capital letters above must appear in bold font and capital letters in the disclosure.

    B.     In connection with each user experience on an Ecommerce Platform containing one or more reference to a Sweepstakes, on each webpage, screen, or other digital display featuring Product advertisements, the following:

> **No Purchase Necessary.   A Purchase Will Not Improve Your Chances of Winning.   <u>Learn More About How to Enter.</u>**

The text that appears in bold font and capital letters above must appear in bold font and capital letters in the disclosure.   This disclosure must appear at the top of the relevant webpage, screen, or digital display, and remain visible at all times to consumers without having to scroll in any direction as they scroll and navigate through pages on an Ecommerce Platform.

The underlined portion of the disclosure must be a link, which, when engaged with by a consumer, leads directly to a webpage, screen, or other digital display that contains a Call-to-Action which, when engaged with by a consumer, results in immediate submission of an entry for that Sweepstakes entry opportunity.   No Product-related Content may appear on this webpage, screen, or other digital display, provided, however, that Defendant may include a mechanism for the consumer

11

to return to the path or experience from which the consumer was directed.

        C.     On any webpage, screen, or digital display that depicts an empty cart, cart from which a consumer has removed items, or similar device to add or remove items, other than a webpage, screen, or other digital display featuring Product advertisements subject to Section IV.B, the following:

> **No Purchase Necessary.   A Purchase Will Not Improve Your Chances of Winning.   <u>Learn More About How to Enter</u>.**

The text that appears in bold font above must appear in bold font in the disclosure.

The underlined portion of the disclosure must be a link, which, when engaged with, leads consumers directly to a webpage, screen, or other digital display that contains a Call-to-Action which, when engaged with by a consumer, results in immediate submission of an entry for that Sweepstakes entry opportunity.   No Product-related Content other than what appears in the cart may appear on this webpage, screen, or other digital display, provided, however, that Defendant may include a mechanism for the consumer to return to the path or experience from which the consumer was directed.

        Provided, however, that in lieu of the disclosure above, Defendant may provide a Clear and Conspicuous Call-to-Action allowing the consumer to enter the Sweepstakes directly by engaging with the Call-to-Action.

        D.     In advertisements for PCH's Sweepstakes on television, the internet, or other visual media, that:

> **No Purchase Necessary.   A Purchase Will Not Improve Your Chances of Winning.**

This disclosure may not contain any text or image other than the text set forth above or other information regarding Sweepstakes entry eligibility or other entry requirements.   The text that appears in bold font above must appear in bold font in the disclosure.

Provided, however, in instances where Defendant can establish that online advertisements such as Internet search results or banner ads have format, size, character-limit, or similar technological constraints imposed by third-party platforms that make it impossible to make the disclosures required in Section D, Defendant may include only the statement **No Purchase Necessary**.

E.      In advertisements for PCH's Sweepstakes on television, radio, or other audible media, that: "No purchase is necessary to enter a Sweepstakes and a purchase will not improve your chances of winning."

F.      Defendant shall have 60 days from entry of this Order to fulfill the requirements of Sections IV.B and IV.C.

## V.      MANDATORY DISCLOSURE OF MATERIAL COSTS AND TERMS OF PURCHASES

IT IS FURTHER ORDERED that Defendant, Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting any Sweepstakes or offering for sale any Product through digital media, are permanently restrained and enjoined from failing to Clearly and Conspicuously make the following disclosures:

A.      On each webpage, screen, or digital display on which a Product advertisement appears,

13

1.      If the Product advertisement refers to the price of the Product, Defendant must disclose in the advertisement, if applicable, that the stated price does not include the amount of any shipping and handling charges, taxes, or other applicable fees or costs.   The price of the Product must be displayed no less prominently than any installment payment.   If there are multiple Product advertisements on the same webpage, screen, or digital display, Defendant may include a single disclosure that the stated prices do not include the amount of any shipping and handling charges, taxes or other applicable fees or costs, provided the disclosure is Clear and Conspicuous and is visible on the webpage, screen, or other digital display without the consumer having to scroll in any direction.

2.      If the Product advertisement refers to an installment payment, Defendant must disclose the number of required payments, and, if applicable, that such installment payment does not include shipping and handling charges, taxes, and other applicable fees or costs.   If there are multiple Product advertisements on the same webpage, screen, or digital display, Defendant may include a single disclosure that the stated installment payments do not include the amount of any shipping and handling charges, taxes or other applicable fees or costs, provided the disclosure is Clear and Conspicuous and is visible on the webpage, screen, or other digital display without the consumer having to scroll in any direction.

14

B.      On any webpage, screen, or other digital display where Defendant displays Products that have been selected by consumers other than one on which a consumer can place an order, including a shopping cart,

1.      Defendant must provide an editable list of the Products selected with the price of each product in immediate proximity to the Product name, and to the extent applicable, that the prices do not include shipping and handling charges, estimated taxes, other fees or costs.

2.      If applicable, Defendant must state the number of installments and amount of each installment payment, and to the extent applicable, that the installment payments do not include shipping and handling charges, taxes, and other fees or costs.   Information about installments must be placed below, and be no more conspicuous than, the information required under Section V.B.1 above.

C.      On any webpage, screen, or other digital display on which a consumer can place an order, and before consumers place an order for one or more Products, Defendant must provide:

1.      A Call-to-Action that a consumer must engage with before any order can be placed, which discloses that a consumer is placing an order.   This Call-to-Action may not expressly state or imply that the process of placing and committing to pay for an order upon engaging with the Call-to-Action will not be final.

2.      Above the Call-to-Action referred to in Section V.C.1 above,

a.      an editable itemized statement of the order, disclosing the Products ordered, the price of each Product, shipping and handling charges,

15

estimated taxes, and any other applicable fees or costs, and the sum of the foregoing costs.   The sum of the component costs may appear above or below the list of component costs, but must be clearly identified as the total of such costs and no less prominent than the component costs; and

b.      if applicable, the number of installments and amount of each installment payment, inclusive of all components.   Information about installments must be no more prominent than the information required under Section V.C.2.a above.

3.      If applicable, any other types of costs the consumer may be required to pay, including late fees, return costs, or restocking fees, and the circumstances under which such costs may apply.

4.      A link directly to a webpage, screen, or digital display explaining in detail the amount of any other costs the consumer may be required to pay, Defendant's cancellation, return, and payment policies.

D.      Defendant must confirm an order on screen immediately after a consumer has submitted it by:

1.      Identifying the Products the consumer has ordered, stating that the order has been submitted, and indicating that the consumer has agreed to pay for the order.

2.      Providing an itemized statement of the order, disclosing the Products ordered, the price of each Product, shipping and handling charges, estimated taxes, and

any other applicable fees or costs, and the sum of the foregoing costs.   The sum of the component costs may appear above or below the list of component costs, but must be clearly identified as the total of such costs and be no less prominent than the component costs.

3.      If applicable, stating the number of installments and amount of each installment payment, inclusive of all component costs.   Information about installments must be no more conspicuous than the information required under Section V.D.2 above.

4.      If applicable under Section III.E presenting a Call-to-Action to enter the Sweepstakes.

E.      Defendant must confirm an order in an email immediately after a consumer has submitted it by:

1.      Identifying the Products the consumer has ordered, stating that the order has been submitted, and indicating that the consumer has agreed to pay for the order.

2.      Providing an itemized statement of the order, including the Products ordered, the price of each Product, shipping and handling charges, estimated taxes, and any other applicable fees or costs, and the sum of the foregoing costs.   The sum of the component costs may appear above or below the list of component costs, but must be clearly identified as the total of such costs and no less prominent than the component costs.

17

3.  If applicable, stating the number of installments and amount of each installment payment, inclusive of all component costs.   Information about installments must be no more conspicuous than the information required under Section V.E.2 above.

4.  If applicable, providing concise instructions on how the consumer may cancel the order, and describing any time restrictions or other material limitations on cancellation.

5.  If applicable, identifying any other types of costs the consumer may be required to pay, including late fees, return costs, or restocking fees, and the circumstances under which such costs may apply.

6.  Providing a link directly to a webpage, screen, or digital display explaining in detail Defendant's cancellation, return, and payment policies.

F.   On any communication sent to a consumer after the submission of an order regarding the billing, pricing, processing, shipment, delivery, or payment status of such order other than those described in Sections V.D and V.E, above, or PCH communications with consumers in response to consumer inquiries regarding any such order, Defendant must provide:

1.  An itemized statement of the order, including the Products ordered, the price of each Product, shipping and handling charges, taxes, and any other applicable fees or costs, and the sum of the foregoing costs.   The sum of the component costs may appear above or below the list of component costs, but must be clearly identified as the total of such costs and be no less prominent than the component costs.

18

2.   If applicable, the number of installments and amount of each installment payment, inclusive of all component costs.   Information about installments must be no more conspicuous than the information required under Section V.F.1 above.

3.   If applicable, concise instructions on how the consumer may cancel the order, and description of any time restrictions or other limitations on cancellation.

4.   If applicable, any other types of costs the consumer may be required to pay, including late fees, return costs, or restocking fees, and the circumstances under which such costs may apply.

5.   A link directly to a webpage, screen, or digital display explaining in detail Defendant's cancellation, return, and payment policies.

Provided, however, that Defendant need not make the above disclosures in communications sent to a consumer after the submission of an order regarding shipment or delivery where such communications make no reference to billing or payment.

G.   Defendant shall have 60 days from entry of this Order to fulfill the requirements of Sections V.B and V.F.

## VI.   DESTRUCTION OF COLLECTED INFORMATION

IT IS FURTHER ORDERED that Defendant must within thirty (30) days of entry of this Order, delete all Collected Information in Defendant's possession, custody, or control that was collected from consumers prior to January 1, 2019; provided, however, that:

A.   Collected Information need not be deleted to the extent necessary to: (a) Process Sweepstakes entries, orders, and payments; (b) Award prizes; or (c) Fulfill product orders;

19

B.    Collected Information need not be deleted to the extent requested by a government agency or as required by a law, regulation, or court order; and

C.    Collected Information need not be deleted for consumers who re-registered on Defendant's website after January 1, 2019.

## VII.    PROHIBITION AGAINST COMMERCIAL EMAIL MISREPRESENTATIONS

IT IS FURTHER ORDERED that Defendant, Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promotion, offering for sale, or sale of any Product, service, or program, are permanently restrained and enjoined from violating Section 5 of the CAN-SPAM Act, 15 U.S.C. §§ 7704, of which a copy of the CAN-SPAM Act, 15 U.S.C. §§ 7701-7713, is attached hereto as Exhibit A, by, including but not limited to, initiating, procuring, or transmitting, or assisting others in initiating, procuring, or transmitting, a commercial electronic mail message that contains a subject heading that is likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message.

## VIII.    MONETARY JUDGMENT

IT IS FURTHER ORDERED that:

A.    Judgment in the amount of Eighteen Million Five Hundred Thousand Dollars ($18,500,000) is entered in favor of the Commission against Defendant as monetary relief. Defendant is ordered to pay to the Commission $18,500,000 Dollars, which, as Defendant stipulates, its undersigned counsel holds in escrow for no purpose other than payment to the Commission.

Such payment must be made within 14 days of entry of this Order by electronic fund transfer in accordance with instructions previously provided by a representative of the Commission.

B.      Defendant relinquishes dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

C.      The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission, including in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order, such as nondischargeability complaint in any bankruptcy case.

D.      The facts alleged in the Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

E.      Defendant acknowledges that its Taxpayer Identification Number (Employer Identification Number), which Defendant must submit to the Commission, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. §7701.

F.      All money received by the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for consumer relief, such as redress and any attendant expenses for the administration of any redress fund.   If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after such redress is completed, the Commission may apply any remaining money for such related relief (including consumer information remedies) as it determines to be reasonably related to Defendant's practices alleged in the Complaint.   Any money not used for relief is to be

deposited to the U.S. Treasury.   Defendant has no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection.

## IX.    CUSTOMER INFORMATION

IT IS FURTHER ORDERED that Defendant, Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from directly or indirectly, failing to provide sufficient customer information to enable the Commission to efficiently administer consumer redress.   Defendant represents that it has provided this redress information to the Commission.   If a representative of the Commission requests in writing any information related to redress, Defendant must provide it, in the form prescribed by the Commission, within 14 days.

## X.    ORDER ACKNOWLEDGMENTS

IT IS FURTHER ORDERED that Defendant obtain acknowledgments of receipt of this Order:

A.    Defendant, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.    For 10 years after entry of this Order, Defendant must deliver a copy of this Order to: (1) all principals, officers, directors, and LLC managers and members; (2) all employees having managerial responsibilities for conduct related to the subject matter of the Order and all agents and representatives who participate in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting.   Delivery must occur within 7 days of entry of this Order for current personnel.   For all others, delivery must occur before they assume their responsibilities.

C.     From each individual or entity to which Defendant delivered a copy of this Order, that Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## XI.     COMPLIANCE REPORTING

IT IS FURTHER ORDERED that Defendant make timely submissions to the Commission:

A.     One year after entry of this Order, Defendant must submit a compliance report, sworn under penalty of perjury:

　　　　1.     Defendant must:   (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with Defendant; (b) identify all of Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, and the means of advertising, marketing, and sales; (d) describe in detail whether and how that Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

B.     For 15 years after entry of this Order, Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

　　　　1.     Defendant must report any change in: (a) any designated point of contact; or (b) the structure of any Defendant or any entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including:   creation, merger,

23

sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

C.      Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against Defendant within 14 days of its filing.

D.      Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746. such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.   Executed on:   _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.      Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to:   Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin:   FTC v. Publishers Clearing House, LLC [Matter No. 1823145].

## XII.   RECORDKEEPING

IT IS FURTHER ORDERED that Defendant must create certain records for 15 years after entry of the Order and retain each such record for 5 years.   Specifically, Defendant, must create and retain the following records:

A.      accounting records showing all revenues and identifying the sources of all such revenues;

24

B.      personnel records showing, for each person providing services, whether as an employee or otherwise, that person's:   name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.      records of any market, behavioral, or psychological research, or user, customer, or usability testing, including any A/B or multivariate testing, copy testing, surveys, focus groups, interviews, clickstream analysis, eye or mouse tracking studies, or analyses regarding consumers' impressions of any advertisements, marketing, or promotions of Sweepstakes or Products;

D.      records of any consumer surveys that gather information about consumers' impressions of any advertisements, marketing, or promotions of Sweepstakes or Products;

E.      records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

F.      all records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission; and

G.      a copy of each unique advertisement or other marketing material relating to the Ecommerce Platform, including all emails and copies of all iterations of order pages, entry pages, and payment pages;

H.      a copy of each unique page that requests Collected Information.

## XIII.   COMPLIANCE MONITORING

IT IS FURTHER ORDERED that, for the purpose of monitoring Defendant's compliance with this Order including any failure to transfer any assets as required by this Order:

A.      Within 14 days of receipt of a written request from a representative of the Commission, Defendant must:   submit additional compliance reports or other requested

25

information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying.   The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

       B.     For matters concerning this Order, the Commission are authorized to communicate directly with Defendant.   Defendant must permit representatives of the Commission to interview any employee or other person affiliated with Defendant who has agreed to such an interview.   The person interviewed may have counsel present.

       C.     The Commission may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to Defendant or any individual or entity affiliated with Defendant, without the necessity of identification or prior notice. Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

## XIV.   RETENTION OF JURISDICTION

     IT IS FURTHER ORDERED that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.


**SO ORDERED this** __30th__ **day of** __June_____, 202_3_.


                                 /s/ Eric N. Vitaliano
                                 UNITED STATES DISTRICT JUDGE

**SO AGREED AND STIPULATED:**

**FOR THE PLAINTIFF:**

**FEDERAL TRADE COMMISSION**

Date: 6/23/23

Miry Kim
Elsie Kappler
Josh Doan
Federal Trade Commission
600 Pennsylvania Ave., N.W.
Washington, DC 20580
202.326.3622 (MK)
202.326.2466 (EK)
202.326.3187 (JD)
202.326.3395 (Fax)
mkim@ftc.gov
ekappler@ftc.gov
jdoan@ftc.gov

27

**FOR DEFENDANTS:**

_____     Date:   05/05/2023
Linda Goldstein                                      _____
Victoria Rutherfurd
Lauren Lyster
Baker & Hostetler LLP
45 Rockefeller Plaza New
York, NY 10111
lgoldstein@bakerlaw.com
212.589.4206 (LG)
212.589.4201 (Fax)

Randal Shaheen
Baker & Hostetler LLP
1050 Connecticut Ave., N.W.
Suite 1100
Washington, DC 20036
rshaheen@bakerlaw.com
202.861.1521 (RS)
202.861.1783 (Fax)


**DEFENDANT:   Publishers Clearing House LLC**


_____     Date:   05/05/2023
Andrew Goldberg, as President                _____
of Publishers Clearing House LLC

28

# Exhibit A

Public Law 108–187
108th Congress

## An Act

To regulate interstate commerce by imposing limitations and penalties on the transmission of unsolicited commercial electronic mail via the Internet.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

### SECTION 1. SHORT TITLE.

This Act may be cited as the "Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003", or the "CAN-SPAM Act of 2003".

### SEC. 2. CONGRESSIONAL FINDINGS AND POLICY.

(a) FINDINGS.—The Congress finds the following:

(1) Electronic mail has become an extremely important and popular means of communication, relied on by millions of Americans on a daily basis for personal and commercial purposes. Its low cost and global reach make it extremely convenient and efficient, and offer unique opportunities for the development and growth of frictionless commerce.

(2) The convenience and efficiency of electronic mail are threatened by the extremely rapid growth in the volume of unsolicited commercial electronic mail. Unsolicited commercial electronic mail is currently estimated to account for over half of all electronic mail traffic, up from an estimated 7 percent in 2001, and the volume continues to rise. Most of these messages are fraudulent or deceptive in one or more respects.

(3) The receipt of unsolicited commercial electronic mail may result in costs to recipients who cannot refuse to accept such mail and who incur costs for the storage of such mail, or for the time spent accessing, reviewing, and discarding such mail, or for both.

(4) The receipt of a large number of unwanted messages also decreases the convenience of electronic mail and creates a risk that wanted electronic mail messages, both commercial and noncommercial, will be lost, overlooked, or discarded amidst the larger volume of unwanted messages, thus reducing the reliability and usefulness of electronic mail to the recipient.

(5) Some commercial electronic mail contains material that many recipients may consider vulgar or pornographic in nature.

(6) The growth in unsolicited commercial electronic mail imposes significant monetary costs on providers of Internet access services, businesses, and educational and nonprofit institutions that carry and receive such mail, as there is a finite volume of mail that such providers, businesses, and

Dec. 16, 2003
[S. 877]

Controlling the
Assault of Non-
Solicited
Pornography and
Marketing Act of
2003.
15 USC 7701
note.

15 USC 7701.

institutions can handle without further investment in infrastructure.

(7) Many senders of unsolicited commercial electronic mail purposefully disguise the source of such mail.

(8) Many senders of unsolicited commercial electronic mail purposefully include misleading information in the messages' subject lines in order to induce the recipients to view the messages.

(9) While some senders of commercial electronic mail messages provide simple and reliable ways for recipients to reject (or "opt-out" of) receipt of commercial electronic mail from such senders in the future, other senders provide no such "opt-out" mechanism, or refuse to honor the requests of recipients not to receive electronic mail from such senders in the future, or both.

(10) Many senders of bulk unsolicited commercial electronic mail use computer programs to gather large numbers of electronic mail addresses on an automated basis from Internet websites or online services where users must post their addresses in order to make full use of the website or service.

(11) Many States have enacted legislation intended to regulate or reduce unsolicited commercial electronic mail, but these statutes impose different standards and requirements. As a result, they do not appear to have been successful in addressing the problems associated with unsolicited commercial electronic mail, in part because, since an electronic mail address does not specify a geographic location, it can be extremely difficult for law-abiding businesses to know with which of these disparate statutes they are required to comply.

(12) The problems associated with the rapid growth and abuse of unsolicited commercial electronic mail cannot be solved by Federal legislation alone. The development and adoption of technological approaches and the pursuit of cooperative efforts with other countries will be necessary as well.

(b) CONGRESSIONAL DETERMINATION OF PUBLIC POLICY.—On the basis of the findings in subsection (a), the Congress determines that—

(1) there is a substantial government interest in regulation of commercial electronic mail on a nationwide basis;

(2) senders of commercial electronic mail should not mislead recipients as to the source or content of such mail; and

(3) recipients of commercial electronic mail have a right to decline to receive additional commercial electronic mail from the same source.

15 USC 7702.

**SEC. 3. DEFINITIONS.**

In this Act:

(1) AFFIRMATIVE CONSENT.—The term "affirmative consent", when used with respect to a commercial electronic mail message, means that—

(A) the recipient expressly consented to receive the message, either in response to a clear and conspicuous request for such consent or at the recipient's own initiative; and

(B) if the message is from a party other than the party to which the recipient communicated such consent, the recipient was given clear and conspicuous notice at

the time the consent was communicated that the recipient's electronic mail address could be transferred to such other party for the purpose of initiating commercial electronic mail messages.

(2) COMMERCIAL ELECTRONIC MAIL MESSAGE.—

(A) IN GENERAL.—The term "commercial electronic mail message" means any electronic mail message the primary purpose of which is the commercial advertisement or promotion of a commercial product or service (including content on an Internet website operated for a commercial purpose).

(B) TRANSACTIONAL OR RELATIONSHIP MESSAGES.—The term "commercial electronic mail message" does not include a transactional or relationship message.

(C) REGULATIONS REGARDING PRIMARY PURPOSE.—Not later than 12 months after the date of the enactment of this Act, the Commission shall issue regulations pursuant to section 13 defining the relevant criteria to facilitate the determination of the primary purpose of an electronic mail message.    <span style="float:right">Deadline.</span>

(D) REFERENCE TO COMPANY OR WEBSITE.—The inclusion of a reference to a commercial entity or a link to the website of a commercial entity in an electronic mail message does not, by itself, cause such message to be treated as a commercial electronic mail message for purposes of this Act if the contents or circumstances of the message indicate a primary purpose other than commercial advertisement or promotion of a commercial product or service.

(3) COMMISSION.—The term "Commission" means the Federal Trade Commission.

(4) DOMAIN NAME.—The term "domain name" means any alphanumeric designation which is registered with or assigned by any domain name registrar, domain name registry, or other domain name registration authority as part of an electronic address on the Internet.

(5) ELECTRONIC MAIL ADDRESS.—The term "electronic mail address" means a destination, commonly expressed as a string of characters, consisting of a unique user name or mailbox (commonly referred to as the "local part") and a reference to an Internet domain (commonly referred to as the "domain part"), whether or not displayed, to which an electronic mail message can be sent or delivered.

(6) ELECTRONIC MAIL MESSAGE.—The term "electronic mail message" means a message sent to a unique electronic mail address.

(7) FTC ACT.—The term "FTC Act" means the Federal Trade Commission Act (15 U.S.C. 41 et seq.).

(8) HEADER INFORMATION.—The term "header information" means the source, destination, and routing information attached to an electronic mail message, including the originating domain name and originating electronic mail address, and any other information that appears in the line identifying, or purporting to identify, a person initiating the message.

(9) INITIATE.—The term "initiate", when used with respect to a commercial electronic mail message, means to originate or transmit such message or to procure the origination or

transmission of such message, but shall not include actions that constitute routine conveyance of such message. For purposes of this paragraph, more than one person may be considered to have initiated a message.

(10) INTERNET.—The term "Internet" has the meaning given that term in the Internet Tax Freedom Act (47 U.S.C. 151 nt).

(11) INTERNET ACCESS SERVICE.—The term "Internet access service" has the meaning given that term in section 231(e)(4) of the Communications Act of 1934 (47 U.S.C. 231(e)(4)).

(12) PROCURE.—The term "procure", when used with respect to the initiation of a commercial electronic mail message, means intentionally to pay or provide other consideration to, or induce, another person to initiate such a message on one's behalf.

(13) PROTECTED COMPUTER.—The term "protected computer" has the meaning given that term in section 1030(e)(2)(B) of title 18, United States Code.

(14) RECIPIENT.—The term "recipient", when used with respect to a commercial electronic mail message, means an authorized user of the electronic mail address to which the message was sent or delivered. If a recipient of a commercial electronic mail message has one or more electronic mail addresses in addition to the address to which the message was sent or delivered, the recipient shall be treated as a separate recipient with respect to each such address. If an electronic mail address is reassigned to a new user, the new user shall not be treated as a recipient of any commercial electronic mail message sent or delivered to that address before it was reassigned.

(15) ROUTINE CONVEYANCE.—The term "routine conveyance" means the transmission, routing, relaying, handling, or storing, through an automatic technical process, of an electronic mail message for which another person has identified the recipients or provided the recipient addresses.

(16) SENDER.—

(A) IN GENERAL.—Except as provided in subparagraph (B), the term "sender", when used with respect to a commercial electronic mail message, means a person who initiates such a message and whose product, service, or Internet web site is advertised or promoted by the message.

(B) SEPARATE LINES OF BUSINESS OR DIVISIONS.—If an entity operates through separate lines of business or divisions and holds itself out to the recipient throughout the message as that particular line of business or division rather than as the entity of which such line of business or division is a part, then the line of business or the division shall be treated as the sender of such message for purposes of this Act.

(17) TRANSACTIONAL OR RELATIONSHIP MESSAGE.—

(A) IN GENERAL.—The term "transactional or relationship message" means an electronic mail message the primary purpose of which is—

(i) to facilitate, complete, or confirm a commercial transaction that the recipient has previously agreed to enter into with the sender;

(ii) to provide warranty information, product recall information, or safety or security information with respect to a commercial product or service used or purchased by the recipient;

(iii) to provide—

(I) notification concerning a change in the terms or features of;

(II) notification of a change in the recipient's standing or status with respect to; or

(III) at regular periodic intervals, account balance information or other type of account statement with respect to,

a subscription, membership, account, loan, or comparable ongoing commercial relationship involving the ongoing purchase or use by the recipient of products or services offered by the sender;

(iv) to provide information directly related to an employment relationship or related benefit plan in which the recipient is currently involved, participating, or enrolled; or

(v) to deliver goods or services, including product updates or upgrades, that the recipient is entitled to receive under the terms of a transaction that the recipient has previously agreed to enter into with the sender.

(B) MODIFICATION OF DEFINITION.—The Commission by regulation pursuant to section 13 may modify the definition in subparagraph (A) to expand or contract the categories of messages that are treated as transactional or relationship messages for purposes of this Act to the extent that such modification is necessary to accommodate changes in electronic mail technology or practices and accomplish the purposes of this Act.

**SEC. 4. PROHIBITION AGAINST PREDATORY AND ABUSIVE COMMERCIAL E-MAIL.**     15 USC 7703.

(a) OFFENSE.—

(1) IN GENERAL.—Chapter 47 of title 18, United States Code, is amended by adding at the end the following new section:

**"§ 1037. Fraud and related activity in connection with electronic mail**

"(a) IN GENERAL.—Whoever, in or affecting interstate or foreign commerce, knowingly—

"(1) accesses a protected computer without authorization, and intentionally initiates the transmission of multiple commercial electronic mail messages from or through such computer,

"(2) uses a protected computer to relay or retransmit multiple commercial electronic mail messages, with the intent to deceive or mislead recipients, or any Internet access service, as to the origin of such messages,

"(3) materially falsifies header information in multiple commercial electronic mail messages and intentionally initiates the transmission of such messages,

"(4) registers, using information that materially falsifies the identity of the actual registrant, for five or more electronic

**117 STAT. 2704          PUBLIC LAW 108–187—DEC. 16, 2003**

mail accounts or online user accounts or two or more domain names, and intentionally initiates the transmission of multiple commercial electronic mail messages from any combination of such accounts or domain names, or

"(5) falsely represents oneself to be the registrant or the legitimate successor in interest to the registrant of 5 or more Internet Protocol addresses, and intentionally initiates the transmission of multiple commercial electronic mail messages from such addresses,

or conspires to do so, shall be punished as provided in subsection (b).

"(b) PENALTIES.—The punishment for an offense under subsection (a) is—

"(1) a fine under this title, imprisonment for not more than 5 years, or both, if—

"(A) the offense is committed in furtherance of any felony under the laws of the United States or of any State; or

"(B) the defendant has previously been convicted under this section or section 1030, or under the law of any State for conduct involving the transmission of multiple commercial electronic mail messages or unauthorized access to a computer system;

"(2) a fine under this title, imprisonment for not more than 3 years, or both, if—

"(A) the offense is an offense under subsection (a)(1);

"(B) the offense is an offense under subsection (a)(4) and involved 20 or more falsified electronic mail or online user account registrations, or 10 or more falsified domain name registrations;

"(C) the volume of electronic mail messages transmitted in furtherance of the offense exceeded 2,500 during any 24-hour period, 25,000 during any 30-day period, or 250,000 during any 1-year period;

"(D) the offense caused loss to one or more persons aggregating $5,000 or more in value during any 1-year period;

"(E) as a result of the offense any individual committing the offense obtained anything of value aggregating $5,000 or more during any 1-year period; or

"(F) the offense was undertaken by the defendant in concert with three or more other persons with respect to whom the defendant occupied a position of organizer or leader; and

"(3) a fine under this title or imprisonment for not more than 1 year, or both, in any other case.

"(c) FORFEITURE.—

Courts.

"(1) IN GENERAL.—The court, in imposing sentence on a person who is convicted of an offense under this section, shall order that the defendant forfeit to the United States—

"(A) any property, real or personal, constituting or traceable to gross proceeds obtained from such offense; and

"(B) any equipment, software, or other technology used or intended to be used to commit or to facilitate the commission of such offense.

"(2) PROCEDURES.—The procedures set forth in section 413 of the Controlled Substances Act (21 U.S.C. 853), other than subsection (d) of that section, and in Rule 32.2 of the Federal Rules of Criminal Procedure, shall apply to all stages of a criminal forfeiture proceeding under this section.

*Applicability.*

"(d) DEFINITIONS.—In this section:

"(1) LOSS.—The term 'loss' has the meaning given that term in section 1030(e) of this title.

"(2) MATERIALLY.—For purposes of paragraphs (3) and (4) of subsection (a), header information or registration information is materially falsified if it is altered or concealed in a manner that would impair the ability of a recipient of the message, an Internet access service processing the message on behalf of a recipient, a person alleging a violation of this section, or a law enforcement agency to identify, locate, or respond to a person who initiated the electronic mail message or to investigate the alleged violation.

"(3) MULTIPLE.—The term 'multiple' means more than 100 electronic mail messages during a 24-hour period, more than 1,000 electronic mail messages during a 30-day period, or more than 10,000 electronic mail messages during a 1-year period.

"(4) OTHER TERMS.—Any other term has the meaning given that term by section 3 of the CAN-SPAM Act of 2003.".

(2) CONFORMING AMENDMENT.—The chapter analysis for chapter 47 of title 18, United States Code, is amended by adding at the end the following:

"Sec.
"1037. Fraud and related activity in connection with electronic mail.".

(b) UNITED STATES SENTENCING COMMISSION.—

*28 USC 994 note.*

(1) DIRECTIVE.—Pursuant to its authority under section 994(p) of title 28, United States Code, and in accordance with this section, the United States Sentencing Commission shall review and, as appropriate, amend the sentencing guidelines and policy statements to provide appropriate penalties for violations of section 1037 of title 18, United States Code, as added by this section, and other offenses that may be facilitated by the sending of large quantities of unsolicited electronic mail.

(2) REQUIREMENTS.—In carrying out this subsection, the Sentencing Commission shall consider providing sentencing enhancements for—

(A) those convicted under section 1037 of title 18, United States Code, who—

(i) obtained electronic mail addresses through improper means, including—

(I) harvesting electronic mail addresses of the users of a website, proprietary service, or other online public forum operated by another person, without the authorization of such person; and

(II) randomly generating electronic mail addresses by computer; or

(ii) knew that the commercial electronic mail messages involved in the offense contained or advertised an Internet domain for which the registrant of the domain had provided false registration information; and

(B) those convicted of other offenses, including offenses involving fraud, identity theft, obscenity, child pornography, and the sexual exploitation of children, if such offenses involved the sending of large quantities of electronic mail.

(c) SENSE OF CONGRESS.—It is the sense of Congress that—

(1) Spam has become the method of choice for those who distribute pornography, perpetrate fraudulent schemes, and introduce viruses, worms, and Trojan horses into personal and business computer systems; and

(2) the Department of Justice should use all existing law enforcement tools to investigate and prosecute those who send bulk commercial e-mail to facilitate the commission of Federal crimes, including the tools contained in chapters 47 and 63 of title 18, United States Code (relating to fraud and false statements); chapter 71 of title 18, United States Code (relating to obscenity); chapter 110 of title 18, United States Code (relating to the sexual exploitation of children); and chapter 95 of title 18, United States Code (relating to racketeering), as appropriate.

15 USC 7704.     **SEC. 5. OTHER PROTECTIONS FOR USERS OF COMMERCIAL ELECTRONIC MAIL.**

(a) REQUIREMENTS FOR TRANSMISSION OF MESSAGES.—

(1) PROHIBITION OF FALSE OR MISLEADING TRANSMISSION INFORMATION.—It is unlawful for any person to initiate the transmission, to a protected computer, of a commercial electronic mail message, or a transactional or relationship message, that contains, or is accompanied by, header information that is materially false or materially misleading. For purposes of this paragraph—

(A) header information that is technically accurate but includes an originating electronic mail address, domain name, or Internet Protocol address the access to which for purposes of initiating the message was obtained by means of false or fraudulent pretenses or representations shall be considered materially misleading;

(B) a "from" line (the line identifying or purporting to identify a person initiating the message) that accurately identifies any person who initiated the message shall not be considered materially false or materially misleading; and

(C) header information shall be considered materially misleading if it fails to identify accurately a protected computer used to initiate the message because the person initiating the message knowingly uses another protected computer to relay or retransmit the message for purposes of disguising its origin.

(2) PROHIBITION OF DECEPTIVE SUBJECT HEADINGS.—It is unlawful for any person to initiate the transmission to a protected computer of a commercial electronic mail message if such person has actual knowledge, or knowledge fairly implied on the basis of objective circumstances, that a subject heading of the message would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact

regarding the contents or subject matter of the message (consistent with the criteria used in enforcement of section 5 of the Federal Trade Commission Act (15 U.S.C. 45)).

(3) INCLUSION OF RETURN ADDRESS OR COMPARABLE MECHANISM IN COMMERCIAL ELECTRONIC MAIL.—

(A) IN GENERAL.—It is unlawful for any person to initiate the transmission to a protected computer of a commercial electronic mail message that does not contain a functioning return electronic mail address or other Internet-based mechanism, clearly and conspicuously displayed, that—

(i) a recipient may use to submit, in a manner specified in the message, a reply electronic mail message or other form of Internet-based communication requesting not to receive future commercial electronic mail messages from that sender at the electronic mail address where the message was received; and

(ii) remains capable of receiving such messages or communications for no less than 30 days after the transmission of the original message.

(B) MORE DETAILED OPTIONS POSSIBLE.—The person initiating a commercial electronic mail message may comply with subparagraph (A)(i) by providing the recipient a list or menu from which the recipient may choose the specific types of commercial electronic mail messages the recipient wants to receive or does not want to receive from the sender, if the list or menu includes an option under which the recipient may choose not to receive any commercial electronic mail messages from the sender.

(C) TEMPORARY INABILITY TO RECEIVE MESSAGES OR PROCESS REQUESTS.—A return electronic mail address or other mechanism does not fail to satisfy the requirements of subparagraph (A) if it is unexpectedly and temporarily unable to receive messages or process requests due to a technical problem beyond the control of the sender if the problem is corrected within a reasonable time period.

(4) PROHIBITION OF TRANSMISSION OF COMMERCIAL ELECTRONIC MAIL AFTER OBJECTION.—

(A) IN GENERAL.—If a recipient makes a request using a mechanism provided pursuant to paragraph (3) not to receive some or any commercial electronic mail messages from such sender, then it is unlawful—

(i) for the sender to initiate the transmission to the recipient, more than 10 business days after the receipt of such request, of a commercial electronic mail message that falls within the scope of the request;

(ii) for any person acting on behalf of the sender to initiate the transmission to the recipient, more than 10 business days after the receipt of such request, of a commercial electronic mail message with actual knowledge, or knowledge fairly implied on the basis of objective circumstances, that such message falls within the scope of the request;

(iii) for any person acting on behalf of the sender to assist in initiating the transmission to the recipient, through the provision or selection of addresses to which the message will be sent, of a commercial electronic

mail message with actual knowledge, or knowledge
fairly implied on the basis of objective circumstances,
that such message would violate clause (i) or (ii); or
(iv) for the sender, or any other person who knows
that the recipient has made such a request, to sell,
lease, exchange, or otherwise transfer or release the
electronic mail address of the recipient (including
through any transaction or other transfer involving
mailing lists bearing the electronic mail address of
the recipient) for any purpose other than compliance
with this Act or other provision of law.

(B) Subsequent affirmative consent.—A prohibition
in subparagraph (A) does not apply if there is affirmative
consent by the recipient subsequent to the request under
subparagraph (A).

(5) Inclusion of identifier, opt-out, and physical
address in commercial electronic mail.—(A) It is unlawful
for any person to initiate the transmission of any commercial
electronic mail message to a protected computer unless the
message provides—

(i) clear and conspicuous identification that the message is an advertisement or solicitation;
(ii) clear and conspicuous notice of the opportunity
under paragraph (3) to decline to receive further commercial electronic mail messages from the sender; and
(iii) a valid physical postal address of the sender.

(B) Subparagraph (A)(i) does not apply to the transmission
of a commercial electronic mail message if the recipient has
given prior affirmative consent to receipt of the message.

(6) Materially.—For purposes of paragraph (1), the term
"materially", when used with respect to false or misleading
header information, includes the alteration or concealment of
header information in a manner that would impair the ability
of an Internet access service processing the message on behalf
of a recipient, a person alleging a violation of this section,
or a law enforcement agency to identify, locate, or respond
to a person who initiated the electronic mail message or to
investigate the alleged violation, or the ability of a recipient
of the message to respond to a person who initiated the electronic message.

(b) Aggravated Violations Relating to Commercial Electronic Mail.—

(1) Address harvesting and dictionary attacks.—

(A) In general.—It is unlawful for any person to initiate the transmission, to a protected computer, of a
commercial electronic mail message that is unlawful under
subsection (a), or to assist in the origination of such message through the provision or selection of addresses to
which the message will be transmitted, if such person
had actual knowledge, or knowledge fairly implied on the
basis of objective circumstances, that—

(i) the electronic mail address of the recipient was
obtained using an automated means from an Internet
website or proprietary online service operated by
another person, and such website or online service
included, at the time the address was obtained, a notice
stating that the operator of such website or online

service will not give, sell, or otherwise transfer addresses maintained by such website or online service to any other party for the purposes of initiating, or enabling others to initiate, electronic mail messages; or

(ii) the electronic mail address of the recipient was obtained using an automated means that generates possible electronic mail addresses by combining names, letters, or numbers into numerous permutations.

(B) DISCLAIMER.—Nothing in this paragraph creates an ownership or proprietary interest in such electronic mail addresses.

(2) AUTOMATED CREATION OF MULTIPLE ELECTRONIC MAIL ACCOUNTS.—It is unlawful for any person to use scripts or other automated means to register for multiple electronic mail accounts or online user accounts from which to transmit to a protected computer, or enable another person to transmit to a protected computer, a commercial electronic mail message that is unlawful under subsection (a).

(3) RELAY OR RETRANSMISSION THROUGH UNAUTHORIZED ACCESS.—It is unlawful for any person knowingly to relay or retransmit a commercial electronic mail message that is unlawful under subsection (a) from a protected computer or computer network that such person has accessed without authorization.

(c) SUPPLEMENTARY RULEMAKING AUTHORITY.—The Commission shall by regulation, pursuant to section 13—

(1) modify the 10-business-day period under subsection (a)(4)(A) or subsection (a)(4)(B), or both, if the Commission determines that a different period would be more reasonable after taking into account—

(A) the purposes of subsection (a);

(B) the interests of recipients of commercial electronic mail; and

(C) the burdens imposed on senders of lawful commercial electronic mail; and

(2) specify additional activities or practices to which subsection (b) applies if the Commission determines that those activities or practices are contributing substantially to the proliferation of commercial electronic mail messages that are unlawful under subsection (a).

(d) REQUIREMENT TO PLACE WARNING LABELS ON COMMERCIAL ELECTRONIC MAIL CONTAINING SEXUALLY ORIENTED MATERIAL.—

(1) IN GENERAL.—No person may initiate in or affecting interstate commerce the transmission, to a protected computer, of any commercial electronic mail message that includes sexually oriented material and—

(A) fail to include in subject heading for the electronic mail message the marks or notices prescribed by the Commission under this subsection; or

(B) fail to provide that the matter in the message that is initially viewable to the recipient, when the message is opened by any recipient and absent any further actions by the recipient, includes only—

(i) to the extent required or authorized pursuant to paragraph (2), any such marks or notices;

(ii) the information required to be included in the message pursuant to subsection (a)(5); and

(iii) instructions on how to access, or a mechanism to access, the sexually oriented material.

(2) PRIOR AFFIRMATIVE CONSENT.—Paragraph (1) does not apply to the transmission of an electronic mail message if the recipient has given prior affirmative consent to receipt of the message.

Deadline.

(3) PRESCRIPTION OF MARKS AND NOTICES.—Not later than 120 days after the date of the enactment of this Act, the Commission in consultation with the Attorney General shall prescribe clearly identifiable marks or notices to be included in or associated with commercial electronic mail that contains sexually oriented material, in order to inform the recipient of that fact and to facilitate filtering of such electronic mail.

Federal Register, publication.

The Commission shall publish in the Federal Register and provide notice to the public of the marks or notices prescribed under this paragraph.

(4) DEFINITION.—In this subsection, the term "sexually oriented material" means any material that depicts sexually explicit conduct (as that term is defined in section 2256 of title 18, United States Code), unless the depiction constitutes a small and insignificant part of the whole, the remainder of which is not primarily devoted to sexual matters.

(5) PENALTY.—Whoever knowingly violates paragraph (1) shall be fined under title 18, United States Code, or imprisoned not more than 5 years, or both.

15 USC 7705.

**SEC. 6. BUSINESSES KNOWINGLY PROMOTED BY ELECTRONIC MAIL WITH FALSE OR MISLEADING TRANSMISSION INFORMATION.**

(a) IN GENERAL.—It is unlawful for a person to promote, or allow the promotion of, that person's trade or business, or goods, products, property, or services sold, offered for sale, leased or offered for lease, or otherwise made available through that trade or business, in a commercial electronic mail message the transmission of which is in violation of section 5(a)(1) if that person—

(1) knows, or should have known in the ordinary course of that person's trade or business, that the goods, products, property, or services sold, offered for sale, leased or offered for lease, or otherwise made available through that trade or business were being promoted in such a message;

(2) received or expected to receive an economic benefit from such promotion; and

(3) took no reasonable action—

(A) to prevent the transmission; or

(B) to detect the transmission and report it to the Commission.

(b) LIMITED ENFORCEMENT AGAINST THIRD PARTIES.—

(1) IN GENERAL.—Except as provided in paragraph (2), a person (hereinafter referred to as the "third party") that provides goods, products, property, or services to another person that violates subsection (a) shall not be held liable for such violation.

(2) EXCEPTION.—Liability for a violation of subsection (a) shall be imputed to a third party that provides goods, products, property, or services to another person that violates subsection (a) if that third party—

(A) owns, or has a greater than 50 percent ownership or economic interest in, the trade or business of the person that violated subsection (a); or

(B)(i) has actual knowledge that goods, products, property, or services are promoted in a commercial electronic mail message the transmission of which is in violation of section 5(a)(1); and

(ii) receives, or expects to receive, an economic benefit from such promotion.

(c) EXCLUSIVE ENFORCEMENT BY FTC.—Subsections (f) and (g) of section 7 do not apply to violations of this section.

(d) SAVINGS PROVISION.—Except as provided in section 7(f)(8), nothing in this section may be construed to limit or prevent any action that may be taken under this Act with respect to any violation of any other section of this Act.

**SEC. 7. ENFORCEMENT GENERALLY.**

15 USC 7706.

(a) VIOLATION IS UNFAIR OR DECEPTIVE ACT OR PRACTICE.— Except as provided in subsection (b), this Act shall be enforced by the Commission as if the violation of this Act were an unfair or deceptive act or practice proscribed under section 18(a)(1)(B) of the Federal Trade Commission Act (15 U.S.C. 57a(a)(1)(B)).

(b) ENFORCEMENT BY CERTAIN OTHER AGENCIES.—Compliance with this Act shall be enforced—

(1) under section 8 of the Federal Deposit Insurance Act (12 U.S.C. 1818), in the case of—

(A) national banks, and Federal branches and Federal agencies of foreign banks, by the Office of the Comptroller of the Currency;

(B) member banks of the Federal Reserve System (other than national banks), branches and agencies of foreign banks (other than Federal branches, Federal agencies, and insured State branches of foreign banks), commercial lending companies owned or controlled by foreign banks, organizations operating under section 25 or 25A of the Federal Reserve Act (12 U.S.C. 601 and 611), and bank holding companies, by the Board;

(C) banks insured by the Federal Deposit Insurance Corporation (other than members of the Federal Reserve System) and insured State branches of foreign banks, by the Board of Directors of the Federal Deposit Insurance Corporation; and

(D) savings associations the deposits of which are insured by the Federal Deposit Insurance Corporation, by the Director of the Office of Thrift Supervision;

(2) under the Federal Credit Union Act (12 U.S.C. 1751 et seq.) by the Board of the National Credit Union Administration with respect to any Federally insured credit union;

(3) under the Securities Exchange Act of 1934 (15 U.S.C. 78a et seq.) by the Securities and Exchange Commission with respect to any broker or dealer;

(4) under the Investment Company Act of 1940 (15 U.S.C. 80a–1 et seq.) by the Securities and Exchange Commission with respect to investment companies;

(5) under the Investment Advisers Act of 1940 (15 U.S.C. 80b–1 et seq.) by the Securities and Exchange Commission with respect to investment advisers registered under that Act;

(6) under State insurance law in the case of any person engaged in providing insurance, by the applicable State insurance authority of the State in which the person is domiciled, subject to section 104 of the Gramm-Bliley-Leach Act (15 U.S.C. 6701), except that in any State in which the State insurance authority elects not to exercise this power, the enforcement authority pursuant to this Act shall be exercised by the Commission in accordance with subsection (a);

(7) under part A of subtitle VII of title 49, United States Code, by the Secretary of Transportation with respect to any air carrier or foreign air carrier subject to that part;

(8) under the Packers and Stockyards Act, 1921 (7 U.S.C. 181 et seq.) (except as provided in section 406 of that Act (7 U.S.C. 226, 227)), by the Secretary of Agriculture with respect to any activities subject to that Act;

(9) under the Farm Credit Act of 1971 (12 U.S.C. 2001 et seq.) by the Farm Credit Administration with respect to any Federal land bank, Federal land bank association, Federal intermediate credit bank, or production credit association; and

(10) under the Communications Act of 1934 (47 U.S.C. 151 et seq.) by the Federal Communications Commission with respect to any person subject to the provisions of that Act.

(c) EXERCISE OF CERTAIN POWERS.—For the purpose of the exercise by any agency referred to in subsection (b) of its powers under any Act referred to in that subsection, a violation of this Act is deemed to be a violation of a Federal Trade Commission trade regulation rule. In addition to its powers under any provision of law specifically referred to in subsection (b), each of the agencies referred to in that subsection may exercise, for the purpose of enforcing compliance with any requirement imposed under this Act, any other authority conferred on it by law.

(d) ACTIONS BY THE COMMISSION.—The Commission shall prevent any person from violating this Act in the same manner, by the same means, and with the same jurisdiction, powers, and duties as though all applicable terms and provisions of the Federal Trade Commission Act (15 U.S.C. 41 et seq.) were incorporated into and made a part of this Act. Any entity that violates any provision of that subtitle is subject to the penalties and entitled to the privileges and immunities provided in the Federal Trade Commission Act in the same manner, by the same means, and with the same jurisdiction, power, and duties as though all applicable terms and provisions of the Federal Trade Commission Act were incorporated into and made a part of that subtitle.

(e) AVAILABILITY OF CEASE-AND-DESIST ORDERS AND INJUNCTIVE RELIEF WITHOUT SHOWING OF KNOWLEDGE.—Notwithstanding any other provision of this Act, in any proceeding or action pursuant to subsection (a), (b), (c), or (d) of this section to enforce compliance, through an order to cease and desist or an injunction, with section 5(a)(1)(C), section 5(a)(2), clause (ii), (iii), or (iv) of section 5(a)(4)(A), section 5(b)(1)(A), or section 5(b)(3), neither the Commission nor the Federal Communications Commission shall be required to allege or prove the state of mind required by such section or subparagraph.

(f) ENFORCEMENT BY STATES.—

(1) CIVIL ACTION.—In any case in which the attorney general of a State, or an official or agency of a State, has reason to believe that an interest of the residents of that State has been or is threatened or adversely affected by any person who

violates paragraph (1) or (2) of section 5(a), who violates section 5(d), or who engages in a pattern or practice that violates paragraph (3), (4), or (5) of section 5(a), of this Act, the attorney general, official, or agency of the State, as parens patriae, may bring a civil action on behalf of the residents of the State in a district court of the United States of appropriate jurisdiction—

(A) to enjoin further violation of section 5 of this Act by the defendant; or

(B) to obtain damages on behalf of residents of the State, in an amount equal to the greater of—

(i) the actual monetary loss suffered by such residents; or

(ii) the amount determined under paragraph (3).

(2) AVAILABILITY OF INJUNCTIVE RELIEF WITHOUT SHOWING OF KNOWLEDGE.—Notwithstanding any other provision of this Act, in a civil action under paragraph (1)(A) of this subsection, the attorney general, official, or agency of the State shall not be required to allege or prove the state of mind required by section 5(a)(1)(C), section 5(a)(2), clause (ii), (iii), or (iv) of section 5(a)(4)(A), section 5(b)(1)(A), or section 5(b)(3).

(3) STATUTORY DAMAGES.—

(A) IN GENERAL.—For purposes of paragraph (1)(B)(ii), the amount determined under this paragraph is the amount calculated by multiplying the number of violations (with each separately addressed unlawful message received by or addressed to such residents treated as a separate violation) by up to $250.

(B) LIMITATION.—For any violation of section 5 (other than section 5(a)(1)), the amount determined under subparagraph (A) may not exceed $2,000,000.

(C) AGGRAVATED DAMAGES.—The court may increase a damage award to an amount equal to not more than three times the amount otherwise available under this paragraph if—

(i) the court determines that the defendant committed the violation willfully and knowingly; or

(ii) the defendant's unlawful activity included one or more of the aggravating violations set forth in section 5(b).

(D) REDUCTION OF DAMAGES.—In assessing damages under subparagraph (A), the court may consider whether—

(i) the defendant has established and implemented, with due care, commercially reasonable practices and procedures designed to effectively prevent such violations; or

(ii) the violation occurred despite commercially reasonable efforts to maintain compliance the practices and procedures to which reference is made in clause (i).

(4) ATTORNEY FEES.—In the case of any successful action under paragraph (1), the court, in its discretion, may award the costs of the action and reasonable attorney fees to the State.

(5) RIGHTS OF FEDERAL REGULATORS.—The State shall serve prior written notice of any action under paragraph (1) upon

Notice.
Records.

the Federal Trade Commission or the appropriate Federal regulator determined under subsection (b) and provide the Commission or appropriate Federal regulator with a copy of its complaint, except in any case in which such prior notice is not feasible, in which case the State shall serve such notice immediately upon instituting such action. The Federal Trade Commission or appropriate Federal regulator shall have the right—

    (A) to intervene in the action;

    (B) upon so intervening, to be heard on all matters arising therein;

    (C) to remove the action to the appropriate United States district court; and

    (D) to file petitions for appeal.

    (6) CONSTRUCTION.—For purposes of bringing any civil action under paragraph (1), nothing in this Act shall be construed to prevent an attorney general of a State from exercising the powers conferred on the attorney general by the laws of that State to—

    (A) conduct investigations;

    (B) administer oaths or affirmations; or

    (C) compel the attendance of witnesses or the production of documentary and other evidence.

    (7) VENUE; SERVICE OF PROCESS.—

    (A) VENUE.—Any action brought under paragraph (1) may be brought in the district court of the United States that meets applicable requirements relating to venue under section 1391 of title 28, United States Code.

    (B) SERVICE OF PROCESS.—In an action brought under paragraph (1), process may be served in any district in which the defendant—

        (i) is an inhabitant; or

        (ii) maintains a physical place of business.

    (8) LIMITATION ON STATE ACTION WHILE FEDERAL ACTION IS PENDING.—If the Commission, or other appropriate Federal agency under subsection (b), has instituted a civil action or an administrative action for violation of this Act, no State attorney general, or official or agency of a State, may bring an action under this subsection during the pendency of that action against any defendant named in the complaint of the Commission or the other agency for any violation of this Act alleged in the complaint.

    (9) REQUISITE SCIENTER FOR CERTAIN CIVIL ACTIONS.— Except as provided in section 5(a)(1)(C), section 5(a)(2), clause (ii), (iii), or (iv) of section 5(a)(4)(A), section 5(b)(1)(A), or section 5(b)(3), in a civil action brought by a State attorney general, or an official or agency of a State, to recover monetary damages for a violation of this Act, the court shall not grant the relief sought unless the attorney general, official, or agency establishes that the defendant acted with actual knowledge, or knowledge fairly implied on the basis of objective circumstances, of the act or omission that constitutes the violation.

(g) ACTION BY PROVIDER OF INTERNET ACCESS SERVICE.—

    (1) ACTION AUTHORIZED.—A provider of Internet access service adversely affected by a violation of section 5(a)(1), 5(b), or 5(d), or a pattern or practice that violates paragraph (2), (3), (4), or (5) of section 5(a), may bring a civil action in

any district court of the United States with jurisdiction over the defendant—

(A) to enjoin further violation by the defendant; or

(B) to recover damages in an amount equal to the greater of—

(i) actual monetary loss incurred by the provider of Internet access service as a result of such violation; or

(ii) the amount determined under paragraph (3).

(2) SPECIAL DEFINITION OF "PROCURE".—In any action brought under paragraph (1), this Act shall be applied as if the definition of the term "procure" in section 3(12) contained, after "behalf" the words "with actual knowledge, or by consciously avoiding knowing, whether such person is engaging, or will engage, in a pattern or practice that violates this Act".

(3) STATUTORY DAMAGES.—

(A) IN GENERAL.—For purposes of paragraph (1)(B)(ii), the amount determined under this paragraph is the amount calculated by multiplying the number of violations (with each separately addressed unlawful message that is transmitted or attempted to be transmitted over the facilities of the provider of Internet access service, or that is transmitted or attempted to be transmitted to an electronic mail address obtained from the provider of Internet access service in violation of section 5(b)(1)(A)(i), treated as a separate violation) by—

(i) up to $100, in the case of a violation of section 5(a)(1); or

(ii) up to $25, in the case of any other violation of section 5.

(B) LIMITATION.—For any violation of section 5 (other than section 5(a)(1)), the amount determined under subparagraph (A) may not exceed $1,000,000.

(C) AGGRAVATED DAMAGES.—The court may increase a damage award to an amount equal to not more than three times the amount otherwise available under this paragraph if—

(i) the court determines that the defendant committed the violation willfully and knowingly; or

(ii) the defendant's unlawful activity included one or more of the aggravated violations set forth in section 5(b).

(D) REDUCTION OF DAMAGES.—In assessing damages under subparagraph (A), the court may consider whether—

(i) the defendant has established and implemented, with due care, commercially reasonable practices and procedures designed to effectively prevent such violations; or

(ii) the violation occurred despite commercially reasonable efforts to maintain compliance with the practices and procedures to which reference is made in clause (i).

(4) ATTORNEY FEES.—In any action brought pursuant to paragraph (1), the court may, in its discretion, require an undertaking for the payment of the costs of such action, and assess reasonable costs, including reasonable attorneys' fees, against any party.

15 USC 7707.

## SEC. 8. EFFECT ON OTHER LAWS.

(a) FEDERAL LAW.—(1) Nothing in this Act shall be construed to impair the enforcement of section 223 or 231 of the Communications Act of 1934 (47 U.S.C. 223 or 231, respectively), chapter 71 (relating to obscenity) or 110 (relating to sexual exploitation of children) of title 18, United States Code, or any other Federal criminal statute.

(2) Nothing in this Act shall be construed to affect in any way the Commission's authority to bring enforcement actions under FTC Act for materially false or deceptive representations or unfair practices in commercial electronic mail messages.

(b) STATE LAW.—

(1) IN GENERAL.—This Act supersedes any statute, regulation, or rule of a State or political subdivision of a State that expressly regulates the use of electronic mail to send commercial messages, except to the extent that any such statute, regulation, or rule prohibits falsity or deception in any portion of a commercial electronic mail message or information attached thereto.

(2) STATE LAW NOT SPECIFIC TO ELECTRONIC MAIL.—This Act shall not be construed to preempt the applicability of—

(A) State laws that are not specific to electronic mail, including State trespass, contract, or tort law; or

(B) other State laws to the extent that those laws relate to acts of fraud or computer crime.

(c) NO EFFECT ON POLICIES OF PROVIDERS OF INTERNET ACCESS SERVICE.—Nothing in this Act shall be construed to have any effect on the lawfulness or unlawfulness, under any other provision of law, of the adoption, implementation, or enforcement by a provider of Internet access service of a policy of declining to transmit, route, relay, handle, or store certain types of electronic mail messages.

15 USC 7708.
Deadline.
Reports.

## SEC. 9. DO-NOT-E-MAIL REGISTRY.

(a) IN GENERAL.—Not later than 6 months after the date of enactment of this Act, the Commission shall transmit to the Senate Committee on Commerce, Science, and Transportation and the House of Representatives Committee on Energy and Commerce a report that—

(1) sets forth a plan and timetable for establishing a nationwide marketing Do-Not-E-Mail registry;

(2) includes an explanation of any practical, technical, security, privacy, enforceability, or other concerns that the Commission has regarding such a registry; and

(3) includes an explanation of how the registry would be applied with respect to children with e-mail accounts.

(b) AUTHORIZATION TO IMPLEMENT.—The Commission may establish and implement the plan, but not earlier than 9 months after the date of enactment of this Act.

15 USC 7709.
Deadline.
Reports.

## SEC. 10. STUDY OF EFFECTS OF COMMERCIAL ELECTRONIC MAIL.

(a) IN GENERAL.—Not later than 24 months after the date of the enactment of this Act, the Commission, in consultation with the Department of Justice and other appropriate agencies, shall submit a report to the Congress that provides a detailed analysis of the effectiveness and enforcement of the provisions of this Act and the need (if any) for the Congress to modify such provisions.

PUBLIC LAW 108–187—DEC. 16, 2003        117 STAT. 2717

(b) REQUIRED ANALYSIS.—The Commission shall include in the report required by subsection (a)—

(1) an analysis of the extent to which technological and marketplace developments, including changes in the nature of the devices through which consumers access their electronic mail messages, may affect the practicality and effectiveness of the provisions of this Act;

(2) analysis and recommendations concerning how to address commercial electronic mail that originates in or is transmitted through or to facilities or computers in other nations, including initiatives or policy positions that the Federal Government could pursue through international negotiations, fora, organizations, or institutions; and

(3) analysis and recommendations concerning options for protecting consumers, including children, from the receipt and viewing of commercial electronic mail that is obscene or pornographic.

**SEC. 11. IMPROVING ENFORCEMENT BY PROVIDING REWARDS FOR INFORMATION ABOUT VIOLATIONS; LABELING.**

Reports.
Deadlines.
Procedures.
15 USC 7710.

The Commission shall transmit to the Senate Committee on Commerce, Science, and Transportation and the House of Representatives Committee on Energy and Commerce—

(1) a report, within 9 months after the date of enactment of this Act, that sets forth a system for rewarding those who supply information about violations of this Act, including—

(A) procedures for the Commission to grant a reward of not less than 20 percent of the total civil penalty collected for a violation of this Act to the first person that—

(i) identifies the person in violation of this Act; and

(ii) supplies information that leads to the successful collection of a civil penalty by the Commission; and

(B) procedures to minimize the burden of submitting a complaint to the Commission concerning violations of this Act, including procedures to allow the electronic submission of complaints to the Commission; and

(2) a report, within 18 months after the date of enactment of this Act, that sets forth a plan for requiring commercial electronic mail to be identifiable from its subject line, by means of compliance with Internet Engineering Task Force Standards, the use of the characters "ADV" in the subject line, or other comparable identifier, or an explanation of any concerns the Commission has that cause the Commission to recommend against the plan.

**SEC. 12. RESTRICTIONS ON OTHER TRANSMISSIONS.**

Section 227(b)(1) of the Communications Act of 1934 (47 U.S.C. 227(b)(1)) is amended, in the matter preceding subparagraph (A), by inserting ", or any person outside the United States if the recipient is within the United States" after "United States".

**SEC. 13. REGULATIONS.**

15 USC 7711.

(a) IN GENERAL.—The Commission may issue regulations to implement the provisions of this Act (not including the amendments made by sections 4 and 12). Any such regulations shall be issued in accordance with section 553 of title 5, United States Code.

**117 STAT. 2718**        PUBLIC LAW 108–187—DEC. 16, 2003

(b) LIMITATION.—Subsection (a) may not be construed to authorize the Commission to establish a requirement pursuant to section 5(a)(5)(A) to include any specific words, characters, marks, or labels in a commercial electronic mail message, or to include the identification required by section 5(a)(5)(A) in any particular part of such a mail message (such as the subject line or body).

15 USC 7712.        **SEC. 14. APPLICATION TO WIRELESS.**

(a) EFFECT ON OTHER LAW.—Nothing in this Act shall be interpreted to preclude or override the applicability of section 227 of the Communications Act of 1934 (47 U.S.C. 227) or the rules prescribed under section 3 of the Telemarketing and Consumer Fraud and Abuse Prevention Act (15 U.S.C. 6102).

Deadline.        (b) FCC RULEMAKING.—The Federal Communications Commission, in consultation with the Federal Trade Commission, shall promulgate rules within 270 days to protect consumers from unwanted mobile service commercial messages. The Federal Communications Commission, in promulgating the rules, shall, to the extent consistent with subsection (c)—

(1) provide subscribers to commercial mobile services the ability to avoid receiving mobile service commercial messages unless the subscriber has provided express prior authorization to the sender, except as provided in paragraph (3);

(2) allow recipients of mobile service commercial messages to indicate electronically a desire not to receive future mobile service commercial messages from the sender;

(3) take into consideration, in determining whether to subject providers of commercial mobile services to paragraph (1), the relationship that exists between providers of such services and their subscribers, but if the Commission determines that such providers should not be subject to paragraph (1), the rules shall require such providers, in addition to complying with the other provisions of this Act, to allow subscribers to indicate a desire not to receive future mobile service commercial messages from the provider—

(A) at the time of subscribing to such service; and
(B) in any billing mechanism; and

(4) determine how a sender of mobile service commercial messages may comply with the provisions of this Act, considering the unique technical aspects, including the functional and character limitations, of devices that receive such messages.

(c) OTHER FACTORS CONSIDERED.—The Federal Communications Commission shall consider the ability of a sender of a commercial electronic mail message to reasonably determine that the message is a mobile service commercial message.

(d) MOBILE SERVICE COMMERCIAL MESSAGE DEFINED.—In this section, the term "mobile service commercial message" means a commercial electronic mail message that is transmitted directly to a wireless device that is utilized by a subscriber of commercial mobile service (as such term is defined in section 332(d) of the Communications Act of 1934 (47 U.S.C. 332(d))) in connection with such service.

15 USC 7713.        **SEC. 15. SEPARABILITY.**

If any provision of this Act or the application thereof to any person or circumstance is held invalid, the remainder of this Act and the application of such provision to other persons or circumstances shall not be affected.

PUBLIC LAW 108–187—DEC. 16, 2003          117 STAT. 2719

**SEC. 16. EFFECTIVE DATE.**                                              15 USC 7701
                                                                         note.
The provisions of this Act, other than section 9, shall take
effect on January 1, 2004.

Approved December 16, 2003.

LEGISLATIVE HISTORY—S. 877:
SENATE REPORTS: No. 108–102 (Comm. on Commerce, Science, and Transpor-
          tation).
CONGRESSIONAL RECORD, Vol. 149 (2003):
          Oct. 22, considered and passed Senate.
          Nov. 21, considered and passed House, amended.
          Nov. 25, Senate concurred in House amendment with an amendment.
          Dec. 8, House concurred in Senate amendment.

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>  Plaintiff,<br><br>  v.<br><br>PUBLISHERS CLEARING HOUSE LLC,<br>a New York limited liability company,<br><br>  Defendant. | Case No.:  23-cv-4735 (ENV) (LGD) |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that upon the annexed papers, dated the 27th of June, 2023, the parties jointly move this Court, the Honorable Eric N. Vitaliano presiding, in Courtroom 4C S of the United States District Court for the Eastern District of New York, 225 Cadman Plaza East, Brooklyn, NY 11201, on such a date and time as may be set by the Court, for the entry of a proposed Stipulated Order for Permanent Injunction, Monetary Judgment, and Other Relief.

Dated: June 27, 2023

Respectfully submitted,

SAVVAS S. DIACOSAVVAS
FEDERAL TRADE COMMISSION
Northeast Region
One Bowling Green, Suite 318
New York, NY 10004
Tel.: 212-607-2809
Fax: 212-607-2822
Email: sdiacosavvas@ftc.gov

MIRY KIM
ELSIE B. KAPPLER
JOSH DOAN
FEDERAL TRADE COMMISSION
Division of Marketing Practices
Bureau of Consumer Protection
600 Pennsylvania Ave., N.W., CC-6316
Washington, DC 20580
Tel.: 202-326-3622 (MK)
Tel.: 202-326-2466 (EBK)
Tel.: 202-326-3187 (JD)
Fax: 202-326-3395
Email: mkim@ftc.gov
Email: ekappler@ftc.gov
Email: jdoan@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

LINDA A. GOLDSTEIN
VICTORIA RUTHERFURD
LAUREN LYSTER
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111
Tel.: 212-589-4206 (LAG)
Tel.: 212-589-4683 (VR)
Tel.: 212-589-7036 (LL)
Fax: 212-589-4201
Email: lgoldstein@bakerlaw.com
Email: vrutherfurd@bakerlaw.com
Email: llyster@bakerlaw.com

Attorneys for Defendant
PUBLISHERS CLEARING HOUSE LLC

2